515 A.2d 45

**ALLSTATE INSURANCE COMPANY, Appellant,**

v.

**Paul V. KANE.**

Superior Court of Pennsylvania.

Argued June 26, 1986.

Filed Sept. 11, 1986.

Stephen P. McCloskey, Washington, for appellant.

Edward J. Balzarini, Pittsburgh, for appellee.

Before ROWLEY, McEWEN and TAMILIA, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is an appeal from a court order denying appellant's petition to compel rehabilitation involvement under the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1]

The facts in this case are not in dispute. The appellee, Paul Kane, was involved in a two car accident on April 1, 1984. The appellant, Allstate Insurance Company, is the no-fault insurance carrier for appellee. Appellee suffered serious injuries resulting in permanent spastic paraplegia. Since May of 1984 appellee has been receiving rehabilitative treatment and services from Harmarville Rehabilitation Center and will continue to need such medical treatment in the future. In May of 1985, in anticipation of appellee's expected request for payment of home modification expenses incurred in the construction of a new home, appellant requested of appellee the following, in relevant part:

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq.; 40 P.S. § 1009.101 et seq. (hereinafter cited as the No-Fault Act) (repealed 1984).

1) a meeting between Barb Sallo (appellant's representative) and appellee and his wife;

2) to permit Barb Sallo to obtain follow up information from appellee's treating physicians at Harmarville, especially regarding home care and special equipment needs;

3) to permit Barb Sallo to attend all Harmarville staff conferences regarding appellee's treatment, with appropriate input;

4) some documentation of exactly what appellee expected appellant to pay for with respect to home modification, with an itemization and dollar amounts and an explanation of why the modifications were necessary;

5) Barb Sallo's involvement with the architect and builder with respect to the home modification claim.

Appellee refused the request and in August of 1985 appellant filed a petition to compel rehabilitation involvement under the No-Fault Act, sections 404 and 405. 40 P.S. § 1009.404 and § 1009.405. Argument was heard on the petition at a hearing on October 7, 1985. That same day the court entered an order denying the petition. This appeal followed.

Appellant presents a single issue for review: whether sections 404 and 405 of the No-Fault Act permit an insurance carrier to use its own representative to monitor and have limited involvement in the claimant's expenditures on medical treatment, rehabilitation and home modifications? It appears that there is no case law on this precise subject and that this question is one of the first impression in Pennsylvania.

The Pennsylvania No-Fault Act was adopted in an effort "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b). The sections of the Act in question, 404 and 405, provide that upon application to the court any interested person may present evidence to establish the insurer's responsibility for the cost of required medical needs the claimant is currently undergo-

ing or will undergo in the future. 40 P.S. §§ 1009.404 and 1009.405. Sections 404 and 405, respectively, establish the cost of a specified procedure or treatment for rehabilitation and the cost of a specified course of rehabilitative occupational training. *Id.* Section 406 generally provides for sanctions to be administered where the injured person unreasonably refuses to comply with the court ordered treatment or training, issued pursuant to sections 404 and 405. 40 P.S. § 1009.406.

At the outset, appellant agrees that nowhere in the No-Fault Act as a whole or in sections 404 and 405 is there specific language granting it the right to participate in the course of appellee's rehabilitation. Moreover, appellant is not invoking these sections in order to contest the effectiveness, reasonableness or propriety of appellee's rehabilitation. In effect, appellant requests this Court to read into sections 404 and 405 an implied right, extending beyond the right to compel a specific course of rehabilitation or training, permitting appellant to become involved in the treatment itself by monitoring and in a limited sense participating in the administration of the rehabilitation and home modifications.

Appellant points to the purpose of the No-Fault Act and the logical implications of sections 404 and 405 to derive their construction of these sections. Appellant argues that since sections 404, 405 and 406 explicitly grant an insurer the right to compel a specific course of rehabilitative treatment or training in accordance with the objective of maintaining a low-cost insurance system, it necessarily follows that within the scope of that right is the authority for appellant's limited involvement in appellee's rehabilitation. As further support for this proposition, appellant cites to D. Shrager, The Pennsylvania No-Fault Motor Vehicle Insurance Act, (1983 Supplement), where it is noted that an insurer may also utilize sections 404 and 405 for their own purposes. The insurer may utilize these sections to assert some control over the claimant's medical treatment, and thereby limit future basic loss benefits, where the insurer believes a particular course of rehabilitation or occupational

training will benefit a claimant who is undergoing lengthy treatment without apparent significant improvement. *Id.* at § 1:7.3. Appellant interprets this comment to mean that the control they are authorized to assert over appellee includes monitoring and involving themselves in the course of appellee's rehabilitation. We do not agree.

Our review of the No-Fault Act does not convince us that appellant's confusion follows logically or necessarily. For the claimant's purposes, sections 404 and 405 are generally invoked where long-term treatment is required and "are in effect back-up and enforcement procedures to provide for rehabilitation particularly in circumstances where the accident victim is financially unable to afford appropriate treatment or, ... [where] the obligor fails to assume responsibility for such treatment." Shrager, The Pennsylvania No-Fault Motor Vehicle Act (1979), at § 1:7.3. For the insurer's purposes, sections 404 thru 406 may be used to ensure that the claimant in fact received treatment which will cure him most effectively and thus lessen future loss benefits. In short, the intended purpose and function of these sections is to ensure that appellee receives proper treatment which is promptly paid for. The right to control, even in a limited sense, the administration of appellee's rehabilitation is not synonomous with or derivable from the right to control the type of treatment appellee receives. We do not read these sections to impliedly grant appellant the right to participate in the administration of the rehabilitative process; that aspect of appellee's rehabilitation is not statutorily or logically within the scope of the insurer's function and authority, but rather, it is within the province of the medical profession. Thus, we do not find in the No-Fault Act a sufficient basis for construing sections 404 and 405 in the manner appellant urges.

Appellant further contends that their request for involvement is a limited one and not so farfetched, and this Court should not be unduly prejudiced by the fact that the legislature did not include a specific provision for such involvement since so many important provisions were left out or are in need of clarification by this Court. Appellant asserts

that two important objectives would be served by allowing their involvement during the course of appellee's rehabilitation and home modification rather than after: 1) to facilitate the low-cost objective of the No-Fault Act by permitting the no-fault carrier to have input before the costs are incurred; and 2) to permit the no-fault carrier, one of the two parties to the insurance contract, to provide meaningful input into the rehabilitative process and the home modification project.

For several reasons we find appellant's argument unpersuasive. The fact that this type of provision is absent in the No-Fault Act is significant because it raises the question of why it was omitted. We think a plausible answer may be that the legislature did not determine that it was necessary. Appellant's request for only limited involvement is not so desirable or feasible given the very difficult task of defining and determining what "appropriate" input is, or how far "limited" involvement reaches. Thus, it is questionable whether appellant's involvement, even if economically more efficient, would be more of a hinderance than a help with respect to the primary purpose of ensuring that appellee receives prompt and adequate treatment. Moreover, we are not convinced that appellant's involvement, in addition to the existing provisions available to them, is medically or economically necessary to achieve the objectives of the No-Fault Act. We must assume that appellant can receive proper and adequate treatment and advice, at a reasonable cost, without appellant's intervention. Should appellant have any doubts, they can invoke sections 404 and 405 to prove that another type of treatment or training is better. Likewise, if appellant feels the cost of the present treatment is unreasonable, 106 of the No-Fault Act provides an appropriate remedy. 40 P.S. § 1009.106. Thus, we hold that the No-Fault Act does not contain any implied authority for appellant's involvement in appellee's rehabilitation and home modifications.

Order affirmed.